DECISION
This is an appeal from a June 29, 1994 decision of the Rhode Island Commission for Human Rights. Jurisdiction in this Court is pursuant to G.L. 1956 (1993 Reenactment) § 42-35-15.
Facts/Travel
On November 29, 1991, Judy L. Barros (the appellee) filed a charge against the Center For Behavioral Health, R.I., Inc. (CBH or the appellant) with the Rhode Island Commission for Human Rights (Commission). Ms. Barros alleged that the CBH discriminated against her with respect to the terms and conditions of her employment based upon her pregnancy in violation of G.L. 1956 (1988 Reenactment) § 28-5-7.
On August 30, 1993 and October 28, 1993, hearings on the complaint were held before hearing officers Joaquin Gomes and Cleon E. Harvey. On June 29, 1994, the Commission entered its decision and order, concluding that "the respondent discriminated against the complainant because of her pregnancy." (Decision and Order, June 29, 1994, at 11.)
In its decision and order, the Commission made the following findings of fact which, after a careful review of the record, this Court accepts. Ms. Barros is a nurse with an LPN degree. After working as a nurse for Wayland Health Center for approximately twelve years, she left to work for the CBH in August 1989. Although the position at the CBH paid less money, Ms. Barros would not be required to work on weekends.
CBH is a methadone treatment clinic where Ms. Barros acted as a dispensary nurse. Her responsibilities included dispensing medication and collecting urine samples. As a condition of her employment, Ms. Barros was required to complete the CBH's standard, three month probationary term, which she did successfully. In addition, Ms. Barros received written evaluations in November 1989 and August 1990. In both evaluations Ms. Barros' performance was rated as "meets expectations" or "exceeds expectations" in every category. In the evaluation performed in 1989, Cheryl Hopkins, her supervisor, noted that Ms. Barros was "`a thoughtful, conscientious worker who shows an excellent rapport with both staff and clients.'" (Decision and Order, June 29, 1994 at 2) (citing to Complainants' Exhibit 4). In the evaluation completed in 1990, Ms. Hopkins stated that Ms. Barros "`is pleasant and conscientious, enjoying a good relationship with both staff and clients . . . . A pleasure to work with.'" Id. (citing to Complainant's Exhibit 5).
During the fall of 1990, the CBH changed its location. After the change, the number of clients decreased. In September of 1990, the CBH changed the responsibilities of the staff. Ms. Hopkins, the supervisor who had been dispensing medicine with Ms. Barros, was removed from those duties. Ms. Barros then became responsible for most of the dispensing duties which Ms. Hopkins had performed; however, she was awarded only a .25 per hour pay increase. Ms. Barros complained to Ms. Hopkins and Mr. Underwood, the Clinical Director of the CBH about the small size of her pay increase. Mr. Underwood acknowledged that the pay increase was small and agreed to consult with the Board of Directors. Consequently, Mr. Underwood later told Ms. Barros that the Board of Directors refused to increase her pay. (Trans. Vol I, 8/30/93 at 79.)
In February 1991, Ms. Barros told Ms. Hopkins that she was pregnant and her due date was in September of 1991. (Trans. Vol I, 8/30/93 at 98.) Realizing Ms. Barros was happy about her pregnancy, Ms. Hopkins congratulated her. Id. Although a supervisor, Ms. Hopkins did not know the CBH policy concerning maternity leave. At about the same time, Ms. Barros told Mr. Underwood about her pregnancy and inquired about the CBH's maternity leave policy. Mr. Underwood, the clinical director, replied that he did not know and he would try to find out and let her know. Id. at 99-100. He then asked when she would return to work after the birth, and at that point Ms. Barros was unable to give a definite answer. Approximately three weeks later, Mr. Underwood again asked the complainant when she would be returning to work after the birth of the baby. Still unable to give a definite answer, she did reply that she intended to return to work. From that point, she was never informed by anyone as to CBH's maternity leave policies. (Trans. Vol. I 8/30/93 at 100-101.)
On or around April 15, 1991, Ms. Barros' brother was scheduled to have a bail hearing. Ms. Barros' sister had planned to attend but was unable to do so. Ms. Barros learned the night before the hearing that her presence was needed at the hearing. Ms. Barros testified that she called Ms. Hopkins at home and, although her answering machine came on, it did not seem to be working properly. (Trans., Vol I, 8/30/93 at 107). Ms. Barros further testified that she tried to leave a message about her necessary absence from work the next day. Id. Ms. Barros went on to testify that in order to insure that the CBH would know of her absence she called Mr. Underwood at home and spoke to him personally about her difficulties in reaching Ms. Hopkins and her need to be out of work the next day. Id.
The day after the bail hearing, Mr. Underwood called Ms. Barros into his office. Ms. Barros was told that her services were no longer needed. When Ms. Barros asked what he meant, he said she was terminated. Mr. Underwood explained that she had a bad attitude, she did not get along with the other staff, and that Ms. Hopkins had not received her message about her absence the day before. Mr. Underwood testified that he, Richard Musco, the Executive Director of CBH, and David Piccoli, the owner of CBH, decided that Ms. Barros should be terminated. (Decision and Order, June 29, 1974, at 4) (citing to Trans, Vol. II, 10/28/93 at 19).
After determining the facts at issue, the Commission concluded that in terminating the appellee, the appellant was not motivated by the reasons which it stated but was motivated by the appellee's pregnancy. The Commission noted that when considering the appellant's past method of dealing with the appellee's conduct, along with the CBH's own policies, it was not credible that difficulties arising out of notification for an absence, along with a bad attitude would prompt the appellant to terminate the appellee. In addition, after reviewing all the evidence, the Commission found that the appellant discriminated against the appellee because of her pregnancy.
The instant, timely appeal followed. Oral arguments were heard on April 26, 1996 to clarify some of the issues for this Court's review of the record. On appeal, the CBH asserts that the decision of the Commission was either clearly erroneous and/or arbitrary and capricious in its application of the facts of this case to the relevant law.
Standard of Review
The review of a decision of the Commission by this Court is controlled by R.I.G.L. § 42-35-15 (g) which provides for review of a contested agency decision:
 (g) The court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. The court may affirm the decision of the agency or remand the case for further proceedings, or it may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:
 (1) In violation of constitutional or statutory provisions;
 (2) In excess of the statutory authority of the agency;
 (3) Made upon unlawful procedure;
 (4) Affected by other error or law;
 (5) Clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or
 (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.
This section precludes a reviewing court from substituting its judgment for that of the agency in regard to the credibility of witnesses or the weight of evidence concerning questions of fact. Costa v. Registry of Motor Vehicles, 543 A.2d 1307, 1309 (R.I. 1988); Carmody v. R.I. Conflict of Interest Commission,509 A.2d 453, 458 (R.I. 1986). Therefore, this Court's review is limited to determining whether substantial evidence exists to support the Commission's decision. Newport Shipyard v. RhodeIsland Commission for Human Rights, 484 A.2d 893 (R.I. 1984). "Substantial evidence" is that which a reasonable mind might accept to support a conclusion. Id. at 897. (quotingCaswell v. George Sherman Sand Gravel Co., 120 R.I. 1981,424 A.2d 646, 647 (1981)). This is true even in cases where the court, after reviewing the certified record and evidence, might be inclined to view the evidence differently than the agency.Berberian v. Dept. of Employment Security, 414 A.2d 480, 482 (R.I. 1980). This Court will "reverse factual conclusions of administrative agencies only when they are totally devoid of competent evidentiary support in the record." Milardo v. CoastalResources Management Council, 434 A.2d 266, 272 (R.I. 1981). However, questions of law are not binding upon a reviewing court and may be freely reviewed to determine what the law is and its applicability to the facts. Carmody v. R.I. Conflicts ofInterests Commission, 509 A.2d at 458. The Superior Court is required to uphold the agency's findings and conclusions if they are supported by competent evidence. Rhode Island PublicTelecommunications Authority, et al. v. Rhode Island LaborRelations Board, et al., 650 A.2d 479, 485 (R.I. 1994).
Determining the Basis for Discrimination
G.L. § 28-5-7 (1) states that "it shall be an unlawful employment practice . . . for any employer . . . because of his or her race or color, religion, sex, handicap, age, sexual orientation, or country of ancestral origin . . . to discharge an employee or discriminate against him or her with respect to hire, tenure, compensation, terms, conditions or privileges of employment, or any other matter directly or indirectly related to employment . . . ." It is well-settled that "the trial justice, in considering claims brought pursuant to our Chapter 5 of title 28, should look for guidance in this sensitive area to decision of the federal courts in constructing the Civil Rights Act of 1964." Newport Shipyard v. Rhode Island Commission for HumanRights, 484 A.2d 893 (R.I. 1984). In a complaint under this section, the Commission must apply the standard set forth inMcDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), and St. Mary's Honor Center. et al v. MelvinHicks, 509 U.S. ___, 125 L.Ed.2d 407, 113 S.Ct. 2742 (1993).
The Federal Title VII cases which this Court follows in interpreting our state statute have established the basic allocation of burden and order of presentation of proof:
 First, the plaintiff has the burden of proving by the preponderance of the evidence a prima facie case of discrimination.
 Second, if the plaintiff succeeds in proving the prima facie case, the burden shifts to the defendant to articulate some legitimate, nondiscriminatory reason for the employee's rejection.
 Third, should the defendant carry this burden, the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons but were a pre-text for discrimination. Texas Department of Community Affairs v. Burdine, 450 U.S. 248 at 252-53, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). (citing McDonnell Douglas Corp. v. Green, supra, 802-04 (1973)).
Finally, even if the fact finder determines that the employer's proffered reason constitutes a pre-text for discrimination, additional proof of discrimination is required. St. Mary's HonorCenter, et al v. Melvin Hicks, 509 U.S. ___, 125 L.Ed.2d 407, 113 S. Ct. 2742 (1993). Such additional proof is required as the ultimate burden of persuading the trier of fact that the defendant employer intentionally discriminated against the plaintiff and remains at all times with the plaintiff. Id. at 125 L.Ed.2d 423 (quoting Texas Dept. of Community Affairs v.Burdine, 450 U.S. 248, 253 (1981)).
Arguments on Appeal
The CBH employment manual provides that with respect to termination "`if the employee's behavior, in the judgment of the employee's immediate supervisor and the Director, is of extreme severity, the Director will terminate employment of the employee.'" Id. (quoting to Complainant's Exhibit 3 at p. 16). Mr. Underwood did not ask the appellee's immediate supervisor, Ms. Hopkins, whether it was her opinion that the appellee should be terminated. Ms. Hopkins testified that she did not know that the appellee was going to be terminated. Id. (citing to Trans. Vol. I, 8/30/93 at 209). Ms. Hopkins testified that she did not give the complainant a written reprimand because she thought that the appellee had a possibility of changing her attitude and Ms. Hopkins maintained this position through April of 1991. Id. (citing to Trans. Vol. I, 8/30/93 at 229-230).
The CBH employee manual also provides that if disciplinary action stronger than a warning is given, the employee
 is to be provided with a written notice prior to enforcement. The employee is to receive written announcement that a written reply of appeal to the action may be submitted to the Director within five (5) days. (Decision and Order, June 29, 1994 at 4) (citing to Complainant's Exhibit 3 at 15).
The record demonstrates that the CBH did not provide the appellee with written notice of her termination, advance notice of her termination, or notice of her internal appeal rights. Furthermore, the Commission noted that the CBH employee manual also provides for a series of possible disciplinary actions — an oral reprimand, which is a first warning that the behavior of an employee is unacceptable; written reprimand, which becomes a permanent part of the employee's file; probation, which is considered a severe warning issued in writing that explains clearly that action will be taken if certain deficiencies are not corrected within the probationary period; and finally suspension and termination. Id. at 5 (citing to Compliant's Exhibit 3 at 15-16).
During his testimony Mr. Underwood agreed that this type of disciplinary action is progressive discipline. (Decision and Order, June 29, 1994 at 5) (citing to Trans. Vol. II, 10/28/93 at 40). He also testified that while he followed this progressive discipline with some employees, in appellee's case, he felt it was appropriate to proceed from oral warnings to termination. Id. (citing to Trans. Vol II, 10/28/93 at 44, 45). He also testified that after the appellee filed her charge of discrimination, the CBH compiled the notes maintained by Mr. Underwood and Ms. Hopkins into one typewritten document entitled Documentationof InSubordination. (See Respondent's Exhibit A.) Mr. Underwood and Ms. Hopkins testified that they did not know where the original notes were and they believed that they had been destroyed by the secretary after she typed the document. Id. (citing to Trans. Vol. I, 8/30/93 at 186-187; Trans. Vol. II, 10/28/93 at 100, 103-105). The record reveals that this document is the only documentation of the alleged infractions of the appellee. The appellee was not given a copy of the document or copies of the notes. Neither Mr. Underwood nor Ms. Hopkins were keeping notes as to the infractions of other employees at that time. Some of the entries concerned Ms. Barros reading and smoking shortly before the end of her shift in 1990. Mr. Underwood stated that this was a violation if work was not done and, if work was completed, this was not a "normal occurrence." Id. (citing to Trans. Vol. II 10/28/93 at 108-109). There was no testimony that the appellee did not complete her work. Throughout the hearing the testimony concerned only oral warnings; written warnings were not part of the appellant's case. Ms. Hopkins testified that the reason Ms. Barros did not receive any written warnings was that she "thought Judy had a possibility of changing her attitude." Id. (quoting Trans. Vol. 1, 8/30/93, at 228-229.)
The Commission concluded that the appellee met her burden for establishing a prima facie case of discrimination. (Decision and Order, June 29, 1994 at 8).
The Commission then turned to the CBH's attempt to rebut this prima facie evidence and determined that the CBH succeeded in articulating legitimate, nondiscriminatory reasons for its actions. Id. Those reasons, stated simply, were that the appellee had a "bad attitude"; she was regularly late; she marked dosages as given before they were given; she complained to clients about the CBH; and she notified Mr. Underwood rather than Ms. Hopkins about a necessary absence. Id.
The Commission determined, however, that the above reasons constituted a pre-text for discriminatory employment practices. The Commission found that the purported reason for termination was not credible, especially because the CBH did not follow its own policies for employee termination. There is ample evidence of record to support this conclusion. The CBH did not give the appellee written notice, prior notice, or notice of her internal appeal rights. Furthermore, although the CBH alleged that the appellee's "bad attitude" was a motivation for termination, the CBH did not consult with Ms. Hopkins, the appellee's immediate supervisor, about the termination. Additionally, the record reflects that Ms. Hopkins did not know that the termination would occur; as a matter of fact, her testimony indicates that she still believed oral warnings were the proper method of discipline at that time. Trans. Vol I, 8/30/93 at 228-29). The record contains ample evidence that the appellee was terminated because of her pregnancy.
There is substantial evidence to support the Commission's decision that the CBH discriminated against Ms. Barros because of her pregnancy. (Decision and Order, June 29, 1994 at 11.) The record reflects that the Commission was neither clearly erroneous nor arbitrary and capricious in its application of the facts of this case to the correct standard of law as the appellee did successfully carry her burden of persuasion. Substantial rights of the appellant have not been prejudiced.
After reviewing the record and determining that there is substantial evidence to support the Commission's factual findings, this Court affirms the Commission's decision.
Counsel shall prepare the appropriate judgment for entry.